**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 15-53-DLB-CJS**

**TODD BONDS** **PLAINTIFF**

**v.** **REPORT AND RECOMMENDATION**

**WALTON VERONA INDEPENDENT BOARD OF EDUCATION, et al.** **DEFENDANTS**

* * * * * * * * * * * * * *

This matter is before the Court regarding Defendants' Motions to Dismiss. (R. 15, 18). Plaintiff filed a joint Response to both Motions. (R. 20). Defendant Walton Verona filed a Reply. (R. 21). These motions have been referred to the undersigned for a Report and Recommendation pursuant to the Referral Order in this case. (R. 12). For the reasons explained below, it will be recommended that Defendants' Motions to Dismiss (R. 15, 18) be **GRANTED.**

## I. BACKGROUND AND PROCEDURAL HISTORY[1]

Plaintiff Todd Bonds was employed as a teacher by Defendant Walton Verona Independent Board of Education ("Walton Verona") for the 2011-2012 school year. (R. 15-2). Bonds was employed on a one-year contract. (*Id.*) At the conclusion of the 2011-2012 school year, Walton

[1] "In evaluating the propriety of a dismissal under Rule 12(b)(6), [the presiding Court] must 'consider the pleadings and affidavits in a light most favorable to the Plaintiff.'" *Jones v. City of Carlisle, Ky.*, 3 F.3d 945, 947 (6th Cir. 1993) (quoting *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)). The Court follows that standard in this Report and Recommendation. Still, a neutral discussion of the factual background of the case is included in this Report and Recommendation to inform the reader of the circumstances leading to the present Motions to Dismiss.

Verona opted not to renew Bonds's contract for the following year. (R. 15-3).

After Plaintiff was informed that his contract would not be renewed, he filed an EEOC complaint against Walton Verona for racial discrimination and sent 16 requests for records to Walton Verona under Kentucky's Open Records Act. (R. 15-1, at 2). Between October 2, 2013, and April 28, 2015, Bonds sent at least 51 emails to Walton Verona or members of the School Board with various records requests, accusations of misconduct, and offers for settlement. (*See id.*). As of the parties' briefings on the current Motions, Plaintiff was involved in two lawsuits against Walton Verona in Kentucky state court. (*Id.*). One lawsuit, filed by Walton Verona on May 13, 2014, in the Boone Circuit Court, is an appeal of the Kentucky Attorney General's decision on one of Plaintiff's many open records requests. (*Id.* at 14-15). The other lawsuit, filed by Bonds on December 22, 2014, and also in the Boone Circuit Court, alleged various employment claims, including that Walton Verona was engaged in racial discrimination and had retaliated against him for whistle blowing. (*Id.*, at 8). Additionally, Bonds has filed three unsuccessful complaints with the Kentucky Bar Association against Defendant Donald Ruberg, who serves as attorney for Walton Verona. (*Id.* at 2).

In response to Plaintiff's perceived harassment, Walton Verona banned Plaintiff from entering school board premises on December 31, 2013. (*Id.* at 4). Walton Verona later modified the ban to allow Bonds to enter school board premises only for the purpose of attending school board meetings open to the general public. (*Id.* at 6). Plaintiff's emails to Defendants indicate that he at some point intended to personally serve a school board member at her home with filings related to the various disputes between him and Walton Verona, but was informed by Defendant Ruberg that such action would constitute harassment and that he had been repeatedly instructed not to have

personal contact with board members or other individuals named in the lawsuit. (R. 2-2, at 1-2). Bonds was informed via email on February 25, 2015, that all communication with school representatives should be made in writing or by email and forwarded to Defendant Ruberg. (*Id.*).

Bonds filed the Complaint in this case on April 16, 2015. (R. 2). The Defendants named in the Complaint were Walton Verona, Donald Ruberg, and Ruberg's law firm, O'Hara, Ruberg, Taylor, Sloan, and Sergent. (*Id.* at 1). The Complaint lists three counts, each against all named Defendants: Count 1 alleges "censorship," Count 2 alleges "ethnic bullying," and Count 3 alleges destruction of open records in violation of KRS § 519.060. Defendants Donald Ruberg and O'Hara, Ruberg, Taylor, Sloan, & Sergent have moved to dismiss the Complaint in its entirety (R. 15), as has Defendant Walton Verona (R. 18). Bonds filed a Response addressing both Motions to Dismiss. (R. 20). Defendant Walton Verona filed a Reply. (R. 21). The Motions are ripe for review.

## II. STANDARD OF REVIEW

Defendants Walton Verona, Ruberg, and O'Hara, Ruberg, Taylor, Sloan, & Sergent seek to dismiss Plaintiff Bonds's[2] Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 11). When adjudicating a motion to dismiss under 12(b)(6), the Court must determine whether the complaint alleges sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing

[2] Although Todd Bonds's Complaint referred to the Plaintiff as "McScome Communications," a sole proprietorship under Mr. Bonds's control, the Court in this case has previously ruled that Todd Bonds himself is the proper Plaintiff in this case because a sole proprietorship is not recognized under Kentucky law as an entity separate from its proprietor. (*See* R. 6).

*Twombly*, 550 U.S. at 556). Although the complaint need not contain "detailed factual allegations" to survive a 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In addition, in this case Bonds is proceeding pro se. While pro se pleadings are to be liberally construed, they still must satisfy basic pleading requirements. *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004) (citing *Haines v. Kerner*, 404 U.S. 519 (1972)).

In considering a 12(b)(6) motion to dismiss, the reviewing court is required to "accept all the Plaintiff['s] factual allegations as true and construe the complaint in the light most favorable to the Plaintiff." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005). If an allegation is "capable of more than one inference, it must be construed in the plaintiff's favor." *Ashland Hosp. Corp. v. Int'l Bhd. of Elec. Workers Local* 575, 807 F. Supp. 2d 633, 638 (E.D. Ky. 2011) (quoting *Block v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citations omitted)). The Court need not, however, accept as true legal conclusions cast in the form of factual allegations if those conclusions cannot be plausibly drawn from the facts, as alleged. *See Iqbal*, 556 U.S. at 678.

## III. ANALYSIS

Plaintiff has filed an action pursuant to 42 U.S.C. § 1983, which says:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a claim under this statute, Plaintiff must establish that: (1) Defendants were acting under color of state law, and (2) Defendants deprived Plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Fridley v. Horrighs*, 291 F.3d 867, 871 (6th Cir. 2002).

Moreover, in a 42 U.S.C. § 1983 action against a public entity, "[a plaintiff] must show that [the public entity] *itself* is the wrongdoer." *Doe v. Claireborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). (emphasis added). "[The public entity] cannot be found liable unless the plaintiff can establish that an officially executed policy, or the toleration of a custom within the [public entity] leads to, causes, or results in the deprivation of a constitutionally protected right." *Id.*

Bonds asserts that Defendants violated his constitutional rights in two different ways. First, Bonds alleges that he was censored by Defendants in violation of his First Amendment rights (Count 1 of the Complaint). (R. 2, at 4-5). Next, Plaintiff alleges that Defendants subjected him to "ethnic bullying," which the Court interprets as a claim that his equal protection rights under the Fourteenth Amendment were violated due to racial discrimination (Count 2 of the Complaint). (*Id.* at 5-6). In addition to his two constitutional claims, Plaintiff claims that Defendants violated Kentucky state law by destroying public records (Count 3 of the Complaint). (*Id.* at 6-7).

**A. Plaintiff's constitutional claims (Counts 1 and 2 of the Complaint) cannot be maintained against Defendants Ruberg or O'Hara, Ruberg, Taylor, Sloan, & Sergent, as they are not state actors.**

Bonds brings his liberally construed 42 U.S.C. § 1983 claims for "censorship" and "ethnic bullying" against all Defendants, including Walton Verona, Donald Ruberg, and O'Hara, Ruberg, Taylor, Sloan, & Sergent. (R. 2). However, because Defendant Ruberg and his law firm are not

considered state actors for the purposes of 42 U.S.C. § 1983 claims, it will be recommended that the constitutional claims (Counts 1 and 2 of the Complaint) against those parties be dismissed.

It is firmly established that an attorney, while acting in that capacity for a state actor, is not in itself a state actor for the purposes of a 42 U.S.C. § 1983 claim. *Polk Cty. v. Dodson*, 454 U.S. 312, 318-19 (1981). Additionally, "[l]awyers are not, merely by virtue of being officers of the court, state actors for Section 1983 purposes." *Cicchini v. Blackwell*, 127 F. App'x 187, 190 (6th Cir. 2005). Since Plaintiff cannot credibly maintain that either Ruberg or O'Hara, Taylor, Ruberg, Sloan & Sergent were acting under color of state law, a 42 U.S.C. § 1983 claim against them cannot stand. Therefore, Counts 1 and 2 of Plaintiff's Complaint should be dismissed against those Defendants.

**B. Notwithstanding the fact that certain defendants in this case are not state actors, Plaintiff's claims should be dismissed as to all defendants on the merits.**

Although the state actor limitation of 42 U.S.C. § 1983 requires the Court to recommend dismissal of those claims as to certain defendants in this case, all of Plaintiff's claims should also be dismissed against all defendants based on their merits. The Court will discuss each claim individually below.

**1. Count 1 of Plaintiff's Complaint, even when liberally construed as is appropriate for a pro se filing, fails to state a claim upon which relief can be granted.**

Count 1 of Bonds's Complaint alleges that Defendants committed "censorship" by withholding information from him. (*Id.* at 4-5). Even construing this Count liberally in Plaintiff's favor by considering it as a 42 U.S.C. § 1983 claim that Plaintiff's First Amendment rights were violated, Bonds has failed to allege facts that establish a prima facie case of any violation of his constitutional rights. Count 1 should therefore be dismissed.

Plaintiff's Count 1 alleges that Walton Verona employees, at the direction of Defendant Ruberg, took steps to ignore Bonds's repeated emails, going so far as to forward all emails from Bonds into their spam folders. (R. 2, at 5). Even treating this allegation as fact as required when reviewing a motion to dismiss, this action does not entitle Plaintiff to any legal relief. Bonds has cited no legal authority, and this Court can find none, to suggest that individuals have the right to have their emails read by state employees. Forwarding Plaintiff's emails to the spam folder is not "censorship." Plaintiff can still say whatever he wants to say. The First Amendment does not entitle one to an audience, and "nothing in the First Amendment or in [the Supreme Court's] case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues." *Minnesota State Bd. For Comm. Colleges v. Knight*, 465 U.S. 271, 285 (1984); *see also Stackhouse v. City of East Orange*, 2008 WL 4852680 (D. N.J. 2008) ("Plaintiff's allegations fail to state a claim because the right to petition the government for redress of grievances does not include the right to a response from a particular official.").

Bonds alleges that he was banned from entering Walton Verona premises, with the exception of open school board meetings. (R. 2, at 4). This in itself is not a claim which entitles Bonds to relief. It is well established that "school officials have broad discretion to limit parent and third-party access to school property in order to ensure student safety and prevent disruptions in the educational process." *Ritchie v. Coldwater Community Schools*, 2012 WL 2862037, at *16 (W.D. Mich. 2012) (discussing *Lovern v. Edwards*, 190 F.3d 648 (4th Cir. 1999)); *see also Cwik v. Dillon*, 2010 WL 5691404, at *6 (S.D. Ohio 2010) (concluding that the "Plaintiff's liberty interest in directing the

education of his children does not extend to a constitutional right to unlimited admittance into or onto the building and grounds of his children's school").[3]

Plaintiff has accused Walton Verona of ignoring his emails with the use of a spam filter and of banning him from entering school board premises outside the context of a public board meeting. These actions are not violations of Plaintiff's rights to freedom of speech or freedom to petition the government granted by the First Amendment. Therefore, Plaintiff's Count 1 should be dismissed for failure to state a claim upon which relief can be granted.

**2. Count 2 of Plaintiff's Complaint, even when liberally construed as is appropriate for a pro se filing, fails to state a claim upon which relief can be granted.**

Plaintiff's Count 2 alleges that Defendants engaged in "ethnic bullying" with their behavior toward Plaintiff. (R. 2, at 5-6). Viewed in a light most favorable to the Plaintiff, this claim appears to be a claim that Defendants violated Plaintiff's right to equal protection under the Fourteenth Amendment through racial discrimination. However, both the Complaint (R. 2) and Plaintiff's Response (R. 20) are completely devoid of any factual allegations that would justify a claim of racial discrimination, and as such this Count should be dismissed.

Although there is no specifically named cause of action of "ethnic bullying," the Fourteenth Amendment forbids Walton Verona, as a public entity, from discriminating on the basis of race. Had

---

[3] Plaintiff's Complaint does not allege that Bonds was banned from speaking at board meetings as was his right as a member of the general public at a limited public forum. *See Featherstone v. Columbus City Sch. Dist. Bd. of Educ.*, 92 F. App'x 279, 282 (6th Cir. 2004) (citing *City of Madison Joint Sch. Dist. No. 8 v. Wis. Emp't Relations Comm'n*, 429 U.S. 167, 175–76, 97 S.Ct. 421, 426, 50 L.Ed.2d 376 (1976)); *see also Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 758–59 (5th Cir. 2010) (concluding that a school board meeting, including the public comment section, fit "the hornbook definition" of a limited public forum). Plaintiff's Response included an attached letter from Defendant Ruberg indicating that Plaintiff was banned from school premises with the exception of board meetings. (R. 20-2). The letter claims that legal action would be taken against Plaintiff if he became "disruptive" at Board meetings, but in no way categorically bans him from asking questions. Plaintiff himself admits that he has never even attempted to ask questions at any board meeting. (R. 20, at 5-6).

Plaintiff's Complaint alleged facts that demonstrated incidents of discrimination on the basis of race, Plaintiff's Count 2 could proceed to trial. *See, e.g.*, *Risinger v. Ohio Bureau of Workers' Compensation.*, 883 F.2d 475 (6th Cir. 1989) (Sixth Circuit reversed the District Court's dismissal of a 42 U.S.C. § 1983 claim when the plaintiff had made a prima facie case by alleging several instances of derogatory racial name calling and disparate treatment on the job based on her race); *Perrea v. Cincinnati Public Schools*, 709 F. Supp. 2d 628, 641-46 (S.D. Ohio 2010) (schoolteacher's equal protection rights were violated when her employment was considered subject to a racial balancing scheme that required the school district to maintain among its teachers a racial balance similar to that of the other schools in the district).

In his Complaint, Bonds makes no particular allegations of instances where any of the Defendants treated him disparately due to his race or ethnicity. Bonds conclusorily states that Defendants were "making use of white privilege and [committing] a Hate Crime" (R. 2, at 6). However, Defendant makes no factual allegations of any racially motivated conduct in support of that assertion. Bare assertions of racial discrimination without factual allegations to support them cannot survive a motion to dismiss despite viewing the facts in the light most favorable to the nonmoving party.

Plaintiff's Complaint makes no factual allegations that the Defendants took any specific action motivated by his race. Nor does the Complaint contain allegations of anything Defendants may have said that would suggest Bonds was being discriminated against on the basis of race. There are no allegations of conduct that would indicate Walton Verona had either an official policy or an accepted custom of treating individuals differently on the basis of race. Bonds seems to be arguing that because he was treated badly and because he is a minority, he therefore was treated badly

*because* of his minority status. But such a conclusory assertion, with nothing more, is not actionable, and does not survive the standard for a motion to dismiss.

**3. Because both of Plaintiff's claims under federal law should be dismissed, Count 3, the sole remaining count, should be dismissed as it is a state law claim that is more appropriately decided in the Kentucky state legal system.**

Plaintiff's third claim alleges that Defendants "[have] destroyed pertinent, triable Open Records" in violation of state law. (R. 2, at 7). According to the statute,

> (1) A person is guilty of tampering with public records when:
>
> (a) He knowingly makes a false entry in or falsely alters any public record; or
>
> (b) Knowing he lacks the authority to do so, he intentionally destroys, mutilates, conceals, removes, or otherwise impairs the availability of any public records; or
>
> (c) Knowing he lacks the authority to retain it, he intentionally refuses to deliver up a public record in his possession upon proper request of a public servant lawfully entitled to receive such record for examination or other purposes.
>
> (2) Tampering with public records is a Class D felony.

K.R.S. § 519.060 (2015).

Defendants argue[4] that Bonds's destruction of public records claim should be dismissed under the doctrine of *Pullman* abstention because at least one of Plaintiff's outstanding records requests is currently the subject of an appeal in the Boone Circuit Court. (R. 15-1, at 14-15). The doctrine gets its name from *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), in which the Supreme Court held that when a constitutional question necessarily depended on the interpretation of an unclear state law, a federal court should abstain from deciding the ultimate

---

[4] In its Motion to Dismiss (R. 18), Walton Verona explicitly adopted the argument regarding Plaintiff's Count 3 raised by Defendants Ruberg and O'Hara, Ruberg, Taylor, Sloan & Sergent in their Motion to Dismiss (R. 15). As such, the specific arguments referred to in this section are all from that motion.

question to allow the applicable state court to determine the underlying state issue. The Sixth Circuit further outlined the concept of *Pullman* abstention:

> "Where uncertain questions of state law must be resolved before a federal constitutional question can be decided, federal courts should abstain until a state court has addressed the state questions." This doctrine of abstention, known as the Pullman doctrine, "acknowledges that federal courts should avoid the unnecessary resolution of federal constitutional issues and that state courts provide the authoritative adjudication of questions of state law."

*Brown v. Tidwell*, 169 F.3d 330, 332 (6th Cir. 1999) (quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 508 (1985) (O'Connor, J., concurring)).

Plaintiff's Response does not respond to Defendants' claim that the *Pullman* abstention doctrine should apply here. Nevertheless, the *Pullman* abstention doctrine does not apply to Plaintiff's Count 3. As noted above, the *Pullman* abstention doctrine is "appropriate only when state law is unclear and a clarification of that law would preclude the need to adjudicate the federal question." *Hunter v. Hamilton Cty. Bd. Of Elections*, 635 F.3d 219, 233 (6th Cir. 2011). In the case of Plaintiff's Count 3, there does not appear to be a constitutional question at all. Defendants are merely accused of violating Kentucky state law by destroying public records. (R. 2, at 6-7). As such, the specific doctrine outlined in *Pullman* does not apply to the facts of this case.

The abstention doctrine most applicable to this case is that first outlined by the Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). *Colorado River* outlined circumstances where a federal court's abstention could be appropriate in a case where a parallel proceeding was taking place in a state court. The factors to be considered by a court when determining whether to abstain from a case due to a parallel state proceeding include the inconvenience of the federal forum, the desirability of avoiding piecemeal legislation, and the

order in which the jurisdiction was claimed by the concurrent forums. *Id*. at 818. The Supreme Court further cautioned that "[o]nly the clearest of justifications will warrant dismissal" due to *Colorado River* abstention. *Id.* at 819.

Applying the factors laid out in *Colorado River* to Plaintiff's Count 3 alleging the destruction of open records suggests that abstention would be appropriate in this case. The parallel state case regarding the records at issue began on May 13, 2014 (R. 15-1, at 14), while Plaintiff's Complaint in the present case was filed April 16, 2015 (R. 2). The federal forum is less convenient for determining this state claim then the Boone Circuit Court, especially considering Plaintiff's federal claims in this case are recommended to be dismissed. Finally, the pending state case regarding Plaintiff's open records request will likely include determinations of what records Defendants have in their possession and whether any were destroyed.

Additionally, a doctrine wholly separate from abstention supports the conclusion that the federal courts are not the most appropriate forum for hearing Plaintiff's Count 3. Because the recommendation of this Court is to dismiss both of Plaintiff's constitutional claims, *see supra* Part III.B.1-2, Plaintiff's state law claim alleging the destruction of public records is the sole remaining claim from the Complaint. (*See* R. 2). Courts within the Sixth Circuit have held that "[w]here an action in federal court includes both federal and pendent state claims and the court dismisses the federal claims before trial on a motion for summary judgment, the pendent state claims are ordinarily dismissed as well." *Williams v. City of River Rouge*, 909 F.2d 151, 155 (6th Cir. 1990); *see also Dickson v. Gen. Electric Co.*, 2015 WL 1530660 (N.D. Ohio 2015); *Brooks v. Gen. Motors Corp.*, 203 F. Supp. 2d 818, 825 (E.D. Mich. 2002).Whether Defendants in fact destroyed public records is a matter of state law that is "more properly addressed by the [state] courts." *Williams*, 909 F.2d

at 155. This is especially so given the relatively early progress of discovery in this case and the fact that there are already multiple state law claims pending between the parties. (R. 15, at 6, 8). Therefore, the state courts hearing these public record matters should be left to determine what liability, if any, Defendants face, and the claim in this case should be dismissed.

## IV. CONCLUSION

Accordingly, for the reasons set forth above, **IT IS RECOMMENDED** that:

1. Defendant Ruberg and Defendant O'Hara, Taylor, Ruberg, Sloan & Sergent's Motion to Dismiss (R. 15) be **GRANTED;**

2. Defendant Walton Verona Independent Board of Education's Motion to Dismiss (R. 18) be **GRANTED;**

3. Plaintiff's Complaint (R. 2) be **DISMISSED WITH PREJUDICE** as to Counts 1 and 2 and **DISMISSED WITHOUT PREJUDICE** as to Count 3;[5]

4. Plaintiff's Motion for Partial Summary Judgment (R. 28) be **DENIED AS MOOT**;

5. This matter be **DISMISSED** and **STRICKEN** from the active docket of this Court.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within **fourteen (14) days** of the date of service or further appeal is waived. Fed. R. Civ.

---

[5] When determining whether a claim dismissed on a Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss should be dismissed with or without prejudice, "[t]he relevant issues. . . are (1) whether [Plaintiff] had sufficient notice that his [] Complaint was deficient, and (2) if so, whether [Plaintiff] had an adequate opportunity to cure the deficiencies." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 342 F.3d 634, 644 (6th Cir. 2003). A district court's determination on whether to dismiss a claim with or without prejudice is reviewed on an abuse of discretion standard. *Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485, 495 (6th Cir. 1990).

In this case, Plaintiff was given adequate notice of the deficiencies in his Complaint by Defendants' Motions to Dismiss (R. 15, 18) and could have cured those deficiencies by moving to amend, but did not. Rather than attempt to plead a more particular set of facts that could support a 42 U.S.C. § 1983 claim, Plaintiff filed a Response to Defendants' Motions to Dismiss which merely contained more allegations that did not support any constitutional claim. (R. 20). Therefore, dismissal of Counts 1 and 2 with prejudice is proper. Count 3 should be dismissed without prejudice, as it is recommended to be dismissed for procedural reasons and Plaintiff should be free to litigate that issue in state court.

P. 72(b)(2); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984); *aff'd*, 474 U.S. 150 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (*citing Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may file a response to another party's objection within **fourteen (14) days** after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2).

Dated this 12th day of February, 2016.




**Signed By:**
***Candace J. Smith***
**United States Magistrate Judge**

J:\DATA\Orders\civil cov\2015\15-53 R&R on MTDs - final.wpd